HOLABIRD STATE BANK, Respondent, v. WIPF, et al, Appellants.

(219 N. W. 557.)

(File No. 5914. Opinion filed May 19, 1928.)

Fuller & Robinson, of Pierre, for Appellants.

Dick Haney, of Huron, for Respondent.

MORIARTY, C. The Holabird State Bank brought this action to recover on certain notes, and to foreclose as a mortgage a certain instrument executed by the defendants.

The notes sued upon are three in number, as follows: One for $1,300, dated January 11, 1923, due September 1, 1923, and payable to plaintiff bank, with interest at 10 per cent from date; one for $623, dated January 11, 1923, due February 11, 1923, and payable to J. P. Stahl, with interest at 10 per cent from date; one for $284.40, dated January 11, 1923, due on demand, and payable to J. P. Stahl, with interest at 10 per cent from date.

The instrument sought to be foreclosed as a mortgage is in the statutory form of a warranty deed, purports to convey to the plaintiff bank all of section 35, township 114, range 75, Sully county, S. D., subject to a mortgage of $10,000 "to rural credit board." The instrument bears date of January 11, 1923, and was duly executed by the defendants.

In its complaint, the plaintiff alleges that the said instrument was intended to be a mortgage covering the land therein described, as security for the payment of the three notes sued upon.

The defendants in their answer allege that the J. P. Stahl, who is named as payee in two of the notes sued upon, was and is the president of the plaintiff bank; that the signatures of defendants to said notes were secured by fraudulent representations made to the defendants by said Stahl and relied upon by them, and they say that, if in fact they signed the deed described in the complaint, they were induced to sign the same by false and fraudulent statements made by Stahl, who fraudulently concealed from them the fact that such instrument was a deed.

The record shows the facts involved to be as follows:

On January 11, 1923, the defendant Katharina Wipf held title to section 35, township 114, range 75, the land described in the instrument sought to be foreclosed. The defendant Sam J. Wipf is the husband of the defendant Katharina Wipf. Neither of these defendants can use the English language well enough to transact any complicated business therein. J. P. Stahl is a long-time acquaintance of these defendants, and speaks their native tongue, and they relied upon Stahl's advice and guidance in transacting business. Some time prior to January 11, 1923, the defendants had applied for a state rural credit loan on the land above described, and on that day Stahl and the two defendants met at Onida to arrange for the closing of the state loan. The First State Bank of Onida had in its possession a draft for $10,000 signed by the rural credit board and certain notes, mortgages, and releases relating to existing incumbrances covering the land upon which the state loan was being negotiated.

Stahl did the figuring in the matter of computing the amount required to secure the release of all incumbrances, including past-due interest and taxes, so as to close the new $10,000 loan.

This computation was complicated by the fact that the original

mortgages covered other lands which had been conveyed to parties other than the defendants, and that these other parties had assumed part of the mortgage debts and of the interest thereon, and one quarter section had been sold at foreclosure sale.

To meet the requirement of clearing their title, defendants were required, according to the figures made by Stahl, to raise the sum of $3,712.40 in excess of the $10,000 rural credit draft held by the Onida bank. Of this amount the defendants furnished $1,505 from other sources, and the balance was made up by the three notes sued upon.

After these negotiations at Onida, it was discovered that the amount as computed by Stahl was $100 in excess of the amount actually required to clear the land of all incumbrances, and on January 25, 1923, $101.62 was indorsed as paid on the $623 note.

At the trial, both defendants testified that Stahl told them that the amount of the three notes was required to meet what was against their land, but they testified that they supposed that they were signing a mortgage instead of a deed, and that they understood that the mortgage was to secure the $1,300 note only. And they further testified that part of the interest upon the prior mortgages charged against them in Stahl's figures should have paid by one Tschetter, from whom they took title to the land. The holder of the mortgages had instructed the Onida bank to collect the full amount figured by Stahl and paid out of the funds made up by the notes sued upon and the other items above mentioned. Stahl admitted that he knew Tschetter was to pay interest to December 1, 1921, and it appears that some interest accruing prior to that date was included in the amount paid to the holders of the mortgages. The record does not show whether Tschetter had made any payment or any allowance to the Wipfs to cover the interest which he was to pay.

As to what Stahl was expected to do when he was at Onida on January 11, 1923, Milo R. Brown, the president of the Onida bank, testified that he was present all the time during the negotiation between Stahl and the defendants at his bank on that day. And this witness testified:

"The object at that time was to raise enough money to take care of the indebtedness which was on the land at that time, so

as to leave section 35 free from all liens in order to make this rural credit loan."

The defendant Sam J. Wipf testified:

"I did not have any talk with Mr. Stahl about the Tschetter proposition. What he told me was that, in order to get this rural credit loan, I would have to get the mortgages off of this section 35. In order to get the $10,000, I had to have 35 clear of all liens. That is what I understood Mr. Stahl was doing."

Stahl testified to the same effect, and he further testified that he told the defendants that they would have to give a second mortgage to secure the payment of the notes they were giving for the money advanced by himself and the bank, and that he took the deed for that security.

Each of the defendants admitted that they knew that they were signing the three notes sued upon, and understood that these notes were being given to raise the money to clear section 35 from liens. And they admitted that they signed what they supposed was a mortgage, but they testified that they understood that they were giving the mortgage to secure the $1,300 note only.

The trial court found that the notes were given to raise money to clear section 35 of liens, and that all the funds represented by these notes, as well as all other funds furnished by the defendants in the settlement negotiated by Stahl, were expended honestly for that purpose. An itemized statement of receipts and expenditures supports this finding.

The trial court further found that the warranty deed executed by the defendants was intended as a mortgage to secure the payment of all of the three notes sued upon, and is entitled to be foreclosed as such.

The judgment entered by the trial court is in accordance with these findings, and it specifically, though perhaps needlessly, provides that the judgment shall not be a bar to any right of action which the defendants may have against Tschetter. From this judgment and from an order denying a new trial this appeal is taken.

There is substantial evidence to support the findings and judgment, and there is no preponderance of evidence against them. Under such circumstances, this court will not reverse the judgment of the trial court.

We find no error in the record, and the judgment and order appealed from are affirmed.

BURCH, P. J., and POLLEY, SHERWOOD, CAMPBELL, and BROWN, JJ., concur.